INTERNATIONAL MERCANTILE MARINE CO. v. FELS et al.

(Circuit Court of Appeals, Second Circuit. April 30, 1909.)

No. 223.

1. EXPLOSIVES (§ 7*)—CARRIAGE OF GOODS—DANGEROUS CARGO—DUTY OF SHIPPER.

It is the duty of a shipper of a commodity which is liable to cause an explosion or is otherwise dangerous as part of the cargo of a ship to fully disclose its dangerous character to the carrier before shipment.

[Ed. Note.—For other cases, see Explosives, Dec. Dig. § 7.*]

2. EXPLOSIVES (§ 7*) — INJURY FROM DANGEROUS CARGO — ACTION BY CARRIER AGAINST SHIPPER—BURDEN OF PROOF.

Where a suit by a steamship company to recover for an injury to a vessel by an explosion caused by a commodity shipped by respondent is based on the alleged fact that respondent failed to disclose the dangerous character of such commodity before shipment, the burden of proving such allegation rests on the libelant.

[Ed. Note.—For other cases, see Explosives, Dec. Dig. § 7.*]

3. EXPLOSIVES (§ 7*)—INJURY FROM DANGEROUS CARGO—LIABILITY OF SHIPPER.

Respondents, who were manufacturers of "Fels-Naptha" soap, which contained from 6 to 9 per cent. of chemically free naphtha, before making any shipments of the same on the vessels of libelant steamship company

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

notified its agent of the character of the soap, that it gave off naptha fumes, which, if the soap were stowed in a confined space, might be dangerous, and arranged that it should be stowed in a place where there was a free circulation of air. A subsequent shipment of 1,000 boxes was stowed by libelant in the lower hold, and an explosion occurred which injured the vessel. *Held*, that the disclosure made by respondents was a full compliance with the requirements of the law and the bills of lading in that respect, and that libelant itself was in fault for negligent stowage and could not recover from defendants for the loss.

[Ed. Note.—For other cases, see Explosives, Dec. Dig. § 7.*]

Appeal from the District Court of the United States for the Southern District of New York.

For opinion below, see 164 Fed. 337.

Robinson, Biddle & Benedict (Roderick Terry, Jr., Norman B. Beecher, and W. S. Montgomery, of counsel), for appellant.

Archibald Cox and Frank Pritchard, for appellees.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

NOYES, Circuit Judge. The respondents are manufacturers of a washing soap called "Fels-Naptha Soap." This soap contains from 6 to 9 per cent. of chemically free naptha, and will very slowly give off fumes or vapor. When about 6 to 8 per cent. of these fumes are mixed with air, a compound is formed which will explode upon ignition. But unless the soap is so confined that the naptha vapor cannot readily diffuse in the air, it cannot be regarded as of a dangerous nature. It has been extensively used in this country and abroad, and has been transported upon many different railroads and transportation lines. Prior to the accident in question it does not appear that any explosion was ever charged to it.

The libelant is a steamship company and the owner of the steamship Haverford. On or about June 2, 1906, the Haverford sailed from Philadelphia for Liverpool, having on board in a lower hold a shipment of 1,000 boxes of the respondents' soap. Each box contained 100 bars, and was marked on the outside "Fels-Naptha Soap." The hatches were on during the voyage. The ventilation was by means of two pipe ventilators about four inches in diameter. On June 13, 1906, the ship arrived at Liverpool. The next day the stevedores took off the hatches preparatory to discharging the cargo. Very shortly afterwards an explosion occurred which killed and injured a number of men and greatly injured the ship.

The soap was shipped under a bill of lading which contained the following clause:

"Also that shippers shall be liable for any loss or damage to steamer or cargo caused by inflammable, explosive or dangerous goods shipped without full disclosure of their nature, whether such shipper be a principal or agent; and such goods may be thrown overboard or destroyed at any time without compensation."

The libelant contends that the respondents are responsible for the damages sustained, because: (1) The explosion was caused by the vapor from the soap. (2) The respondents, before making shipments, failed to fully disclose the nature of the soap, as required by the provi-

sions of the bill of lading and by the common law. The District Court sustained the first contention, but dismissed the libel because it failed to find the second contention established.

Upon a careful consideration of the evidence, we think the conclusion reached by the District Court that the explosion was caused by vapor from the soap well founded. But as we think its conclusion with respect to the second contention also correct, any discussion of the cause of the accident is unnecessary. If the respondents are not responsible if the vapor were the cause, no purpose would be served by a review of our examination concerning the cause.

It is, however, incumbent upon us to fully express our views upon the second question—whether the respondents failed to fully disclose the nature and qualities of the soap to the libelant before the shipment. That it was the duty of the respondents at common law to make such a disclosure is unquestionable. Wellington v. Downer Kerosene Oil Company, 104 Mass. 64; Waters-Pierce Oil Co. v. Deselms, 212 U. S. 159, 29 Sup. Ct. 270, 53 L. Ed. ——. And, as we have already seen, a similar duty—possibly a broader obligation—was imposed by the bill of lading.

The first inquiry, perhaps, relates to the burden of proof, although the evidence is of such character that there is little necessity for balancing testimony in reaching a conclusion. In the early case of William v. East India Co., 3 East, 192, where the plaintiff declared that the defendants, who had chartered his ship, put on board a dangerous commodity (by which loss happened) without notice to the captain or other person employed in the navigation, it was held that it lay upon him to prove such negative affirmation. This seems to be the rule today. The libel alleges that the respondents failed to inform the libelant of the dangerous character of the soap, and the burden was undoubtedly upon it to establish such allegation.

But instead of the libelant establishing its negative affirmation of failure to disclose, the case presented by this appeal is one in which the respondents, on their part, have shown to the satisfaction of the District Court that a disclosure was made. It seems certain that in 1902, before any shipments of the soap upon the libelant's ships were made, the respondent Joseph Fels had an interview with Lee McKinstry, the eastbound freight agent of the libelant at Philadelphia, for the purpose of making arrangements for shipping it. This respondent testified in substance that he told McKinstry that he wished the libelant to know the character of the goods he was offering for shipment; that the soap contained naptha and gave off vapors, which might cause an explosion if confined, and that he wanted it stowed in a ventilated part of the ship if carried at all. McKinstry, when called as a witness, practically corroborated this testimony. He stated that Fels told him that other lines had refused to carry the soap on account of its having a percentage of naptha, and that there was some disposition to suppose that there might be danger connected with it; that he did not wish the libelant to take it under a misapprehension; that the soap gave off fumes or vapor, and that in a confined place something might happen, but that in a ventilated place it was probable that nothing would happen. It was also testified that McKinstry offered the cattle decks of the ships

for carrying the soap, they being especially well ventilated. As a result of this interview, McKinstry sent the following telegram to Kobbe, the east-bound freight agent of the libelant at New York:

"Do you see any objections to booking 5,000 to 10,000 case lots Fels-Naptha soap? Would you consider it a dangerous product in any sense of the word?"

Other evidence and memoranda show an expectation that the soap would be carried on the cattle decks or in a special compartment. As a result of the negotiations between McKinstry and the respondents, the latter began to ship large quantities of their soap by the libelant's ships, but to what extent it was carried on the cattle decks does not clearly appear. As already shown, the soap which caused the explosion was in a lower hold.

After reviewing the testimony, to which we have thus briefly referred, the District Judge said:

"I fail to see how there can be any doubt that the respondents sufficiently informed the libelant of the character of the goods they were shipping."

The District Judge saw the witnesses Fels and McKinstry upon the stand, and could note their appearance and behavior. He had opportunities which we do not have to determine the weight to be given to their testimony. He believed their statements, and we find nothing in the record requiring us to disturb his conclusion.

Really the most serious criticism which the libelant is able to make of the testimony of Joseph Fels is that it is in some respects inconsistent with the allegations of the answer and with the testimony of the other respondent, Samuel S. Fels—that in one place it is said that the soap is dangerous, and that notice of its dangerous character was given, while in another place it is said not to be dangerous at all. But we think these inconsistencies are more apparent than real. Under proper conditions of ventilation it is clear from the evidence that the soap is not dangerous. Under certain conditions it may be dangerous. If we view Joseph Fels' statements to McKinstry as of a precautionary nature, there is nothing necessarily inconsistent with the other statements referred to. Certainly no such inconsistencies appear as would warrant this court in saying, in view of the finding of the District Court, that they serve to discredit the testimony of the witness.

In view of the testimony and of the credit given to it by the District Court, we must accept it as established that the respondents made a disclosure of the nature of the soap to the libelant before it was offered for transportation. And we think that the disclosure as testified to was full and sufficient. It seems impossible that the explosion could have occurred if the soap had been carried in a well-ventilated place, e. g., upon the cattle deck of the ship. As the testimony shows an express disclosure, it is unnecessary to consider whether the libelant obtained notice of the nature of the soap in any other way.

The respondents having failed in the performance of no duty imposed either by the bill of lading or by the common law, the libel was properly dismissed.

The decree of the District Court is affirmed, with costs.